**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| INMOBILIARIA JRB, S.A. de C.V., § § Plaintiff, § § vs. § § M/V CABALLO MAYA, HER ENGINES, § BOILERS, TACKLE, FURNITURE, § APPAREL, APPURTENANCES, ETC. § IN REM, et al., § § Defendants. § | CIVIL ACTION NO. 3:17-CV-194 |

**DECLARATION OF DAVID LOPEZ**

I, DAVID LOPEZ, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**I.**
**Introduction**

1.1   My name is David Lopez. I am over 18 years of age. I am duly licensed to practice law in the states of Texas and California and have my law office in San Antonio, Texas. A true and correct copy of my curriculum vitae describing my employment and educational background is attached hereto as **Exhibit 1**.

1.2   The Mexican legal system is the central focus of my scholarly and research interests. Beginning in January 1994, I taught courses involving various aspects of the Mexican legal system, including North American Legal Systems (Comparative Law: U.S., Mexico, and Canada) and NAFTA. I wrote the chapter on "The Legal System of Mexico" that appeared in William Hein & Co.'s 20-volume Modern Legal Systems Cyclopedia in 2000. I also wrote the brief chapter on "Mexico's Legal System" that appeared in 2002 in Transnational Publisher's Doing Business in Mexico series. In 2004, the book titled Mexican Law that I co-authored was published by Oxford University Press. My co-authors are a Justice of the Supreme Court of Mexico, two professors at one of Mexico's top law schools (ITAM) and the former Dean of the University of Houston Law Center. In connection with this work, I have, during the past twenty-three years, conducted intensive research into the structure and operation of Mexico's legal system at the national and state levels.

1.3   I have taught and lectured in Mexico concerning matters of U.S. and Mexican law. In 1996, 1997, 1998, 1999 and 2000, I served as a visiting professor at the Universidad Autónoma de Guadalajara in connection with Baylor Law School's Study Abroad Program. I have delivered lectures on various occasions to Mexican judges, lawyers, and law students in

1



EXHIBIT 2
LOPEZ
April 9, 2018
Reported by:
D. SANDERS, CSR, RDR, CRR, CCR (LA)

Mexico City, Guadalajara, Monterrey and Veracruz, Mexico, and Austin and San Antonio, Texas. From 2001 to the present, I have been involved in an international law practice representing Mexican clients in lawsuits pending in the United States and in international arbitration involving issues of Mexican substantive and procedural law, and representing U.S. businesses on matters relating to Mexican law.

1.4  From 1997 to 2018, I have served as a testifying expert on Mexican law in 135 cases around the country, not including this case. This has included cases in the United States Court of Appeals for the Fifth Circuit and United States District Courts for the:

- Southern District of Alabama,
- Central District of California,
- Southern District of California,
- District of Colorado,
- Eastern District of Louisiana,
- Eastern District of Michigan,
- Western District of Michigan,
- District of Nevada,
- Southern District of New York,
- Western District of New York,
- Northern District of Oklahoma,
- Eastern District of Pennsylvania,
- Northern District of Texas,
- Southern District of Texas (Corpus Christi, Galveston, Houston, Laredo, McAllen and Victoria Divisions),
- Western District of Texas (Del Rio, El Paso, Midland-Odessa and San Antonio Divisions), and
- Western District of Washington.

I have testified as an expert on Mexican law in state courts and arbitral proceedings in:

- Arizona,
- California,
- Colorado,
- Delaware,
- Florida,
- Georgia,
- Illinois,
- Minnesota,
- New Mexico,
- New York,
- Pennsylvania, and
- Texas (Aransas, Bexar, Cameron, Dallas, El Paso, Harris, Hidalgo, Jefferson, Maverick, Montgomery, Parker, Starr, Tarrant, Travis, Val Verde, Webb and Wilson counties).

I have provided expert testimony on Mexican law on behalf of the United States of America and former Attorney General Lorreta Lynch; on behalf of major institutions, such as the Archdiocese of Los Angeles; on behalf of major companies, such as Aeromexico, Daimler Chrysler, Bell Helicopter, Alcoa Fujikura, Nissan, Siemens Power Corporation, Goodrich Corporation, UPS, Sherwin-Williams and Halliburton Energy Services; and on behalf of many individuals and small companies, including Mexican Boxer Saul "Canelo" Alvarez.

Since 1997, I have been retained as a Mexican law expert by lawyers from Mexico, Canada and Scotland as well as from California, Colorado, Florida, Georgia, Illinois, Louisiana, Minnesota, New York, Oklahoma, Pennsylvania, Texas, Washington and Washington, D.C.

I have served as a <u>consulting</u> expert on Mexican law on hundreds of matters over the years.

1.5   I have been asked to opine on Mexican law relating to maritime liens that is relevant to this proceeding.

1.6   In performing the foregoing task and formulating opinions on this matter, I have relied on my general familiarity with Mexican law and Mexico's legal system. I have consulted the sources of Mexican law cited below. In addition, I have reviewed case-specific materials, including the following:

- Plaintiff's Verified Original Complaint (June 19, 2017),
- Defendant's Motion to Vacate Seizure and Request for Damages for Wrongful Arrest (Aug. 14, 2017),
- Declaration of Francisco de Jesús Riveros Garcia (Aug. 13, 2017),
- JRB's Memorandum Opposing Marfield's Motion to Vacate Arrest,
- Order Vacating Arrest of Vessel (Oct. 13, 2017),
- Unsworn Declaration of Omar Olvera de Luna (June 19, 2017),
- Unsworn Declaration of Omar Olvera de Luna (Sept. 15, 2017),
- Request by Shipping Group Mexico, S.A. de C.V. to the Attorney General of Mexico for removal of attachment on the Caballo Maya (May 29, 2015),
- Letter from Office of the Attorney General of Mexico to Lic. Oscar Israel Garcia Cordova (July 3, 2015),
- various invoices (dated Aug. 2015 – July 2016),
- various wire transfer confirmations, and
- Transcript of Hearing on Motion to Vacate Seizure (Oct. 4, 2017).

The conclusions that follow assume that these documents are authentic, that they accurately portray developments in this case, and that the copies of them in my possession are true and complete. I reserve the right to expand or modify my opinions in this matter based on additional case materials presented to me in the future.

1.7   Based on my review of case materials and information provided to me by counsel, I assume the following facts:

(a) In 2014, the Mexican government confiscated the vessel M/V Caballo Maya, an ocean-going cargo ship, pursuant to Mexican criminal law in connection with an investigation relating to Oceanografía, S.A. de C.V.

(b) In May 2015, Shipping Group Mexico, S.A. de C.V. ("SGM"), through its legal representative Oscar Israel Garcia Cordova ("Mr. Garcia"), requested that the Attorney General of Mexico lift the attachment of the vessel and release it to SGM.

(c) On July 3, 2015, the Attorney General of Mexico issued Executive Order A/011/00 appointing Mr. Garcia as legal representative of SGM as bailee ("*depositario*") of the Caballo Maya and ordering SGM to maintain the vessel in good condition until its custody of the vessel was terminated.

(d) Also in July 2015, SGM engaged Inmobiliaria JRB, S.A. de C.V. ("JRB"), a Mexican commercial entity, to contract and arrange for the provision of services and supplies to maintain the vessel on SGM's behalf, as required by the Executive Order of the Attorney General's Office. JRB is a full-service company that provides marine services, both directly and through vendors.

(e) From 2015 to 2017, JRB spent 17,030,745.57 pesos (approximately US$1,065,00.00) to provide various marine supplies and services, either directly or through vendors, for the benefit of the Caballo Maya. Those supplies and services included marine gas oil, diesel, mooring, towing, potable water, maritime advisory services, spare parts, garbage collection and payment of salaries to the crew.

From July 2015 to July 2016, JRB incurred and paid over 6,500,000 pesos in crew salaries.

Between October 2015 and April 2016, JRB incurred and paid over 200,000 pesos for pilotage, mooring, towing and other port services.

(f) In February 2017, Executive Order A/011/00 was terminated and the Caballo Maya was released to Marfield LTD, Inc. ("Marfield").

(g) On June 19, 2017, while the Caballo Maya was docked in Galveston, Texas, JRB initiated this action to recover the amount spent on marine supplies and services for the Caballo Maya, alleging that it possesses a maritime lien under Mexican law against the vessel in that amount.

## II. The Mexican Legal System Generally

2.1 <u>Structure</u>. Mexican government operates according to a federal structure. The federal government maintains a court system with its own body of jurisdictional, procedural and evidentiary rules as do each of the 32 Mexican states (the Federal District of Mexico recently was dissolved and Mexico City was made the country's thirty-second state). In addition, there exists in Mexico a body of federal substantive law and a separate body of

4

substantive law in each of the 32 states.

2.2 <u>Sources of Mexican law</u>. There are a variety of sources of law in the Mexican legal system, including constitutions, statutes, codes, official norms, regulations and judicial rulings. *See* Stephen Zamora et al., <u>Mexican Law</u> 77-94 (2004). Not all of those sources of law are of equal weight or preeminence; rather, a hierarchy of law exists in the Mexican legal system that dictates the relative importance and ordering of the various sources of law. *See id.* at 94-101.

2.3 The single most important source of law in Mexico is the Mexican Constitution of 1917 (*Constitución Política de los Estados Unidos Mexicanos*). In Mexico's hierarchy of legal sources, the federal Constitution dominates all other laws. Like the Constitution of the United States, the Mexican Constitution contains a Supremacy Clause that renders Mexican federal law supreme over state law. Article 133 of the Constitution states:

> *This Constitution, the Laws enacted by Congress pursuant thereto and all Treaties that are in accordance therewith, made or which shall be made by the President of the Republic with the Senate's approval, shall be the Supreme Law of the Union. The judges in every State shall be bound by said Constitution, Laws and Treaties, notwithstanding anything to the contrary in the constitutions or laws of the States.*[1]

2.4 Statutes passed by Mexican legislative bodies are an important body of law in the Mexican legal system. *See* Zamora, *supra*, at 80.

2.5 Because Mexico is a Civil Law country, codes play a primary role in defining the relative legal rights and obligations of parties. Codes are unitary works that attempt to integrate all norms of a distinct branch of law in a systematic, comprehensive, organized and logical manner. Mexico has distinct codes to regulate civil matters, criminal matters, commerce, tax matters, civil procedure and criminal procedure. The federal government and each of the 32 Mexican states possess separate sets of codes. For the most part, state codes parallel the provisions and language of the federal codes.

2.6 Among Mexican codes, none is more central than the civil code. The *Código Civil Federal* ("Federal Civil Code") governs throughout the country in federal matters.

2.7 Mexican civil codes cover all matters in the civil legal realm, including the civil status of individuals, family law, assets, property, succession, contracts and other forms of civil obligations. Mexican civil codes do not provide for a series of torts like those found in Common Law jurisdictions; rather, rules concerning civil liability between private parties are set forth in the portion of the civil codes titled "Obligations" (*De las Obligaciones*). The law of obligations encompasses not only tort theories but also contract and quasi-contract theories of legal duty.

---

[1] Copies of the Mexican law provisions cited in this Declaration are set forth in **Exhibit 2**.

### III. Mexican Maritime Law

3.1   As probably is true in most countries, in Mexico maritime matters are governed by a combination of constitutional law, international treaty, federal codes, federal statutes and federal regulations.

3.2   Constitutional provisions. Article 73 of the Constitution confers on the Mexican Congress the power to legislate in matters of commerce, hydrocarbons and maritime law. Const., Art. 73(X) & (XIII). By virtue of Mexico's Supremacy Clause, federal law concerning these matters controls to the exclusion of state law. Const., Art. 133.

3.3   Federal Maritime Commerce Law. The Maritime Commerce Law (*Ley de Navegación y Comercio Marítimos*) of June 2006 is the statute that regulates Mexican waterways, navigation and services performed therein, as well as acts, events and goods relating to maritime commerce. Maritime Commerce Law ("MCL"), Art. 1.

"Maritime commerce" is defined as activities undertaken by means of the commercial and maritime exploitation of vessels and naval devices for the purpose of transporting persons, goods or things, or of performing activities of exploration, exploitation or capture of natural resources, construction or recreation in an aquatic environment. *Id.*, Art. 2(III). "Vessels" are defined as all constructed items designed to navigate in or under navigable waterways. *Id.*, Art. 2(IV). "Navigable waterways" are defined to include Mexico's territorial sea and Exclusive Economic Zone. *Id.*, Art. 3(a).

The Maritime Commerce Law provides that everything related to Mexican navigable waterways, maritime commerce in Mexico's marine zones, and in general all acts and events that arise therein are within Mexican federal jurisdiction. *Id.*, Art. 4(¶ 1). Foreign vessels found in Mexican waterways are subject to the jurisdiction of and compliance with Mexican law by the mere fact of their presence therein. *Id.*, Art. 5(¶ 2).

Absent an express provision in the Maritime Commerce Law, its regulations or international treaty, other bodies of Mexican law including the Commercial Code (*Código de Comercio*), Federal Civil Code, Federal Code of Civil Procedure (*Código de Procedimientos Civiles*), Federal Labor Law (*Ley Federal del Trabajo*) and international maritime custom and usage (*los usos y las cosumbres marítimas internacionales*) shall apply to maritime commerce in a supplementary fashion. *Id.*, Art. 6.

### IV. Maritime Liens Under Mexican Law

4.1   Title Four, Chapter V of the Maritime Commerce Law is titled "About Maritime Privileges" (*De Los Privilegios Marítimos*) and contains ten provisions, Articles 91 through 100. Of these, Articles 91, 93, 94, 97 and 100(¶ 2) appear to be relevant to this case.

Article 91 states:

> *Maritime privileges grant to the privileged creditor the right to be preferred in payment ahead of other creditors in accordance with that provided for in the present Law, according to the following order:*
>
> *I. Salaries and other amounts due to the crew of the vessel, by virtue of their enrolling on board, including costs of repatriation and social security contributions payable on their behalf;*
>
> *II. Claims arising from indemnification for causing death or bodily injury on land or water, in direct relation with the operation of the vessel;*
>
> *III. Claims for the reward for the salvage of the vessel;*
>
> *IV. Claims charged to the vessel arising from the use of port infrastructure, maritime signaling, inland waterways and pilotage; and*
>
> *V. Claims arising from indemnification for extracontractual fault, by reason of the loss or material damage caused by the operation of the vessel other than loss of or damage to cargo, containers and passengers' effects transported aboard the vessel.*
>
> *The maritime privileges arising from the last trip shall be preferred to those arising from previous trips.*

MCL, Art. 91. Article 93 states:

> *Maritime privileges on vessels shall be extinguished by the passage of one year from the time they become enforceable, unless an action directed at the attachment or detention of the vessel has been exercised.*
>
> *The termination of the privilege does not imply that of the obligation or indemnification; these shall be extinguished in the form and terms set out in the applicable legislation.*[2]

Id., Art. 93. Article 94 states:

> *The assignment or subrogation of a claim or indemnification guaranteed with a maritime privilege, simultaneously produces the assignment or subrogation of the corresponding maritime privilege.*

---

[2] The second paragraph of Article 93, which provides that termination of the maritime lien does not necessarily mean that the claim underlying the lien also terminates, supports my view, more fully explained below, that the existence of a maritime lien under Mexican law is a two-step process that begins with the existence of a claim or obligation in favor a "creditor."

7

*Id.*, Art. 94.  Article 97 states:

> *Registration of maritime privileges shall not be obligatory, but judicial resolutions that establish an obligation in favor of the creditor shall be susceptible to registration in the National Maritime Public Registry.*

*Id.*, Art. 97.  Article 100(¶ 2) states:

> *The privileged maritime obligations will give rise to the execution for their total amount, on the vessel, freight or cargo subject to payment thereof. Therefore, at the request of the plaintiff the attachment will be decreed or the retention will be confirmed upon admitting the complaint. The mortgage creditor may pay or take charge of the privileged obligations that precede it, in which case the mortgage will be in the first rank.*

*Id.*, Art. 100(¶ 2).

4.2   Pursuant to these provisions, the existence of a maritime privilege under Mexican law is a two-step process.  The first step in the process requires that a person must be a "creditor," meaning that the person must have a legal right to compensation vis-à-vis a vessel, owner, charterer, manager or operator thereof.  For example, a creditor may be entitled to compensation for labor provided as a member of the crew of the vessel, for death or injury arising out of operation of the vessel, as a reward for salvage of the vessel or for the vessel's use of port infrastructure.

Whether a person is a "creditor" is determined by substantive law outside of Chapter V of the Maritime Commerce Law, such as Mexico's Commercial Code, Federal Civil Code, a Mexican statute or regulation or even foreign substantive law.

4.3   In this case, SGM was the bailee for the Caballo Maya appointed by Mexico's Attorney General and was ordered to maintain the vessel in good condition.  The apparently valid Executive Order of the Attorney General was the legal basis for SGM's duty to provide supplies and services to the Caballo Maya to keep it in good condition.

SGM in turn engaged JRB to provide services and supplies to maintain the vessel in accordance with the Executive Order.  Although there was no written agency agreement between SGM and JRB, Mexico's Commercial Code permits a commercial agency (*i.e.*, an agency between merchants) to be created by oral designation.  Commercial Code, Art. 274.

JRB in turn arranged for the provision of services and supplies to the Caballo Maya for the time it was detained pursuant to the Executive Order.  Although Mexican law does not permit a commercial agent to delegate its agency absent authorization by the principal, a commercial agent can employee others to perform subordinate matters.  *Id.*, Art. 280. Further, Mexican law permits a commercial agent to perform its agency either in its own name or in the name of its principal.  *Id.*, Art. 283.  Here, the fact that JRB purchased

8

supplies and services directly in its own name and not in SGM's name is permissible under Mexican law.

The July 2015 Executive Order was based on the Mexican Attorney General's authority to secure instruments, objects or products of crime pursuant to Mexico's Federal Code of Criminal Procedure. *See* Executive Order, at 1; Federal Code of Criminal Procedure (*Código Federal de Procedimientos Penales*), Art. 181.[3] When an object is secured by placing it temporarily in the possession of a third party, a bailment relationship is created under Mexican law. *See id.*, Art. 182-C. Under the Commercial Code, a bailment is "commercial" – and therefore governed by the terms of the Commercial Code – if the subject matter of the bailment is a commercial object. Commercial Code, Art. 332. Here, the Caballo Maya clearly is a commercial object.

Under the Commercial Code, a bailee (*depositorio*) is entitled to compensation for expenses incurred in connection with the bailment. *Id.*, Art. 333. Absent a contract, compensation to the bailee shall be in accordance with the custom and usage of the place where the bailment is made. *Id.* Thus, to the extent it incurred expenses in connection with the deposit of the vessel, SGM, the bailee, was entitled to reimbursement in accordance with the customs of the place of bailment, here Ciudad del Carmen, Campeche, Mexico.

JRB has the right to seek compensation for the amounts paid to maintain the Caballo Mayo based on subrogation and payment provisions set forth in the Federal Civil Code.[4] Article 2058 of the Civil Code provides that subrogation occurs by operation of law and without need of any declaration by the interested parties if the person who pays off a debt has a legal interest in performance of the obligation. FCC, Art. 2058(II). By virtue of its legal duty to act as SGM's agent with respect to the maintenance of the vessel, JRB had a legal interest in the performance of SGM's obligation to comply with the Executive Order by maintaining the vessel in good condition and was legally authorized to make payment. FCC, Art. 2065.

Under the Civil Code, "payment" is defined as delivery of the amount due. FCC, Art. 2062. JRB possesses records showing that it ultimately paid for all of the relevant services and supplies. Thus, as a matter of law, JRB made payment each time it delivered the amounts due in the subject invoices to the third parties who provided the services and supplies.

Under Mexican law, viewing Marfield as the ultimate "debtor" on the obligations paid by JRB, JRB had no duty to inform Marfield that it was making the payments. FCC, Art.

---

[3] The Federal Code of Criminal Procedure has been replaced by Mexico's National Code of Criminal Procedure (*Código Nacional de Procedimientos Penales*).

[4] Absent a relevant legal provision in Mexico's Commercial Code, the provisions of the Federal Civil Code apply and supplement the Commercial Code. Commercial Code, Art. 2. The Commercial Code does not have provisions that deal with subrogation and payment and, therefore, it is appropriate to look to the Civil Code for such law.

9

2067. Moreover, as a matter of Mexican law, JRB was authorized to make those payments against Marfield's wishes. FCC, Art. 2068.

4.4   Once the first step is satisfied and a person is a "creditor" vis-à-vis a vessel, owner, charterer, manager or operator thereof, the second step is that the creditor may then be entitled to a maritime privilege under Article 91 and the benefits of such a privilege under Chapter V and means for enforcement or satisfaction of the credit obligation.

As noted above, Article 91 of the Maritime Commerce Law confers on certain creditors a maritime privilege – the right to be preferred in payment over other creditors. For example, a crew member owed salary or a creditor who paid salaries of a vessel's crew is entitled to a maritime privilege superior to all other creditors. MCL, Art. 91(I).

Article 100(¶ 2) of the Maritime Commerce Law grants the holder of a maritime privilege the right to request that a court impose an embargo (attachment) on or order the retention of the subject vessel. MCL, Art. 100(¶ 2).

4.5   In this case, as demonstrated by invoices and wire transfer confirmations or other proof of payment, JRB arranged for the crew of the Caballo Maya to be paid salary of over 6,500,000 pesos and in fact paid those amounts. Further, based on such evidence, JRB arranged for and in fact paid for port services for the vessel in excess of 200,000 pesos.

Pursuant to Article 91(I) of the Maritime Commerce Law, JRB possessed a maritime lien with respect to the amounts it paid for crew salaries.

Pursuant to Article 91(IV) of the Maritime Commerce Law, JRB possessed a maritime lien with respect to the amounts it paid for pilotage and other port services.

## V.
## Final Points

5.1   My fee for serving as an expert witness in this case on issues relating to Mexican law is $600.00 per hour. In no event is my expert witness fee contingent upon the substance of opinions rendered by me.

5.2   To the best of my knowledge and information, I have testified live as an expert on Mexican law by deposition, in court or in arbitration during the preceding four-year period (January 2014 to January 2018) in the following cases:

<u>Continental Automotive Systems US, Inc. v. HUF North America Automotive Parts Manufacturing Corporation</u>, No. 10-CH-22202, Circuit Court of Cook County, Illinois, County Department – Chancery Division;

<u>Gloria de los Angeles Trevino Ruiz, Individually and on Behalf of Her Minor Child, Angel Gabriel de Jesus Trevino and Armando Ismael Gomez v. Azteca America, Una Vez Mas, LP d/b/a Azteca America, Un Vez Mas McAllen License, LLC, Azteca International Corporation, TV Azteca, S.A.B. de C.V., Patricia Chapoy, and</u>

10

Publimax, S.A. de C.V., No. C-1027-09-C, 139th District Court, Hidalgo County, Texas;

Leandro Ampudia Rovirosa v. Michelle Vieth Paetau, No. 4:12-CV-01414, U.S. District Court for the Southern District of Texas;

Michelle Berezowsky Gomez v. Pablo Angel Rendon Ojeda, No. 4:12-CV-03496, U.S. District Court for the Southern District of Texas [Houston Division];

Jose de la Rosa Lucio, et al. v. Omar Estrada Adame, et al., No. C-2565-12-I, 398th District Court, Hidalgo County, Texas;

In the Matter of the Marriage of Gloria Araceli Loeza Aceves and Paul James Hudson, No. F-2569-10-B, 93rd District Court, Hidalgo County, Texas;

In re Ruth Villegas Medellin and Carlos Martinez Duncker, No. 2013-D-4946, Circuit Court of Cook County, Illinois, County Department, Domestic Relations Division;

In re the Marriage of Marga Ruth Loaiza and Lorenzo Marquez, No. DS50809, Superior Court of California, County of San Diego;

In the Estate of William F. Trimble, Deceased, No. CIV 13-0523, County Court at Law No. 2, Parker County, Texas;

In the Matter of the Marriage of Susan Elizabeth Ruiz and Matias S. Ruiz, No. 15-04-00198-CVW, 218th District Court, Wilson County, Texas;

Angélica Fuentes Téllez (México) v. Jorge Carlos Vergara Madrigal (México), No. 21077/RD, International Chamber of Commerce, International Court of Arbitration [New York];

Mario Efrain Rosales Barralaga v. Cooper Tire and Rubber Co., et al., No. 2015-03070, 295th District Court, Harris County, Texas; and

In the Matter of the Marriage of Carmen Tarragona Saez and Adrian G. Rosas Solorzano, No. 2014-CI-17095, 285th District Court, Bexar County, Texas.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in San Antonio, Texas on January 17, 2018.

_____
DAVID LOPEZ

11