Case 3:17-cv-00194   Document 97   Filed on 09/21/18 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
September 21, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| INMOBILIARIA JRB, S.A. DE C.V., *et al*, | § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 3:17-CV-00194 |
| M/V CABALLO MAYA, HER ENGINES, BOILERS, TACKLE, FURNITURE, APPAREL, APPURTENANCES, ETC., IN REM, *et al*, | § § § § § § | |
| Defendants. | § § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case was tried in a bench trial before the Court. The original Plaintiff and Counter-Defendant Inmobiliaria JRB, S.A. de C.V. ("Inmobiliaria") and Defendant M/V Caballo Maya, by and through its owner Marfield LTD Inc. ("Marfield"), appeared by and through their counsel of record. The Court, having carefully considered the evidence admitted at trial, makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

**A. The Parties**

1.  Inmobiliaria is a foreign corporation incorporated and with its principal place of business in Mexico.

2.  At all relevant times, Inmobiliaria claims to have been acting as the agent of SGM S.A. de C.V, f/k/a GGM Shipping S.A. de C.V. GGM ("SGM"). SGM is a foreign corporation incorporated and with its principal place of business in Mexico. SGM

sought leave to intervene in this lawsuit and re-arrest the M/V Caballo Maya. Dkt. 78. SGM's motion was struck by the Court for failure to follow the Local Rules of the Southern District of Texas. Dkt. 79.

3. Oscar Israel Garcia Cordova ("Cordova") is a citizen of Mexico. At all relevant times, Cordova is and has been a director and corporate representative of both Inmobiliaria and SGM.

4. Oceanografia S.A. de C.V. ("Oceanografia") is a foreign corporation incorporated and with its principal place of business in Mexico. Oceanografia is a known affiliate of SGM. Both companies are part of a group of Mexican companies that alleged to have purchased the M/V Caballo Maya from Marfield as part of a disputed purchase agreement.

5. The M/V Caballo Maya is a Panamanian-flagged ocean-going vessel with International Maritime Organization ("IMO") No. 9453341. The M/V Caballo Maya *in rem* is the original Defendant in this matter.

6. Marfield is a foreign company incorporated and with its principal place of business in Panama. Marfield is, and at all material times has been, the owner of the M/V Caballo Maya with the exclusive right to possession.

7. On June 21, 2017, Marfield appeared to defend the M/V Caballo Maya pursuant to Rule C(6) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions. In addition to representing the M/V Caballo Maya, Marfield is the Counter-Plaintiff in this matter.

**B. Inmobiliaria's Alleged Maritime Lien**

8. Inmobiliaria initiated this lawsuit to enforce an alleged maritime lien arising under Mexican law against the M/V Caballo Maya. Prior to trial, Inmobiliaria announced that its claim had been disposed and that the only remaining claim before the Court was Marfield's counterclaim for wrongful arrest. Inmobiliaria announced that it did not intend to prosecute its claim for a maritime lien against the M/V Caballo Maya at trial. Dkts. 71, 76.

9. The Mexican statute under which Inmobiliaria claimed a maritime lien is Article 91 of the Navigation Law. Marfield Trial Exhibit 217.

10. The supplies and services that Inmobiliaria alleges created the basis of its maritime lien are reflected in the Invoices admitted at trial (the "Invoices"). Marfield Trial Exhibit 1.

11. Inmobiliaria's claim for a maritime lien arose from services and supplies allegedly provided to the M/V Caballo Maya during the time period between July 21, 2015 through February 15, 2017, when the vessel was under arrest by the Mexican Government.

12. The genesis of the dispute is a 2011 Memorandum Agreement for the sale of the M/V Caballo Maya (the "MOA"). Marfield Trial Exhibit 220. Marfield is the seller under the MOA. The buyer is a group of affiliated Mexican companies including SGM and Oceanografia.

13. In 2014, an Arbitration proceeding was initiated in London to determine the competing claims for breach of the MOA and ownership of the M/V Caballo Maya asserted by Marfield and SGM/Oceanografia.

14. On May 8, 2017, the Arbitration Tribunal entered a Partial Final Award in Marfield's favor. Marfield Trial Exhibit 222. Included in the Award was a declaration that Marfield "is the owner of and entitled to exclusive possession of the vessel Caballo Maya as against the Respondent Buyers [Oceanografia and SGM]" and that "Respondent Buyers are jointly and severally liable to pay to Marfield, damages at common law or its equivalent as compensation under clause 13 to be assessed for the repudiatory breach of the MOA by the Buyers in nor purchasing the vessel Caballo Maya for US$130 million…"

15. While the Arbitration proceeding was taking place, the M/V Caballo Maya was in the possession of Oceanografia pursuant to a cancelled bareboat charter agreement by and between Marfield and Oceanografia. Oceanografia motored the M/V Caballo Maya into Mexican waters before Marfield could recover possession.

16. The vessel was in Oceanografia's possession when, on or about March 6, 2014, the United States of Mexico seized the M/V Caballo Maya as part of a criminal investigation (and later a bankruptcy proceeding) into Oceanografia.

17. Once arrested, the Office of the Mexican Attorney General—the Procuraduria General de la Republica ("PGR")—took possession of the M/V Caballo Maya.

18. Marfield appeared before the PGR and asserted ownership of the M/V Caballo Maya and requested redelivery of the vessel.

19. Cordova, acting on behalf of SGM, also appeared before the PGR and asserted ownership of the M/V Caballo Maya and requested redelivery. Based on its purported ownership of the vessel, Cordova, acting on behalf of SGM, asked to be appointed as depository of the M/V Caballo Maya to provide care and maintenance to the vessel and to return it to service.

20. The PGR approved SGM's request to act as depository of the M/V Caballo Maya, subject to the terms and resolutions reflected in Marfield Trial Exhibit 203 (the "Depository Resolutions"). In relevant part, the Depository Resolutions include an instruction that SGM cannot "encumber" the M/V Caballo Maya.

21. On July 20, 2015, SGM signed an agreement (Marfield Trial Exhibit 204) to act as depository of the M/V Caballo Maya, subject to the terms and conditions stated therein (the "Depository Agreement"). In relevant part, the Depository Agreement states that SGM is responsible for the expenses of caring for and maintaining the M/V Caballo Maya and will not request reimbursement. The M/V Caballo Maya was delivered to SGM's possession that same day.

22. On July 21, 2015, SGM and Inmobiliaria entered into a bareboat charter agreement whereby Inmobiliaria chartered the M/V Caballo Maya from SGM (the "SGM/Inmobiliaria Charter"). Marfield Trial Exhibit 206. There is no evidence the charter agreement was ever cancelled.

23. In the SGM/Inmobiliaria Charter, Inmobiliaria and SGM acknowledged the arrest of the M/V Caballo Maya and SGM's designation as depository of the vessel. Inmobiliaria and SGM agreed that Inmobiliaria would be responsible for all "expenses for fuel, ports, captaincies, boat services, fees and taxes, docks and others, ship officers and crew, as well as all types of taxes, agent expenses, commissions, loads, trimming, weighing, loading, unloading, declaration and delivery of the cargo, acknowledgement of the hatches and rigging for mooring."

24. On September 2, 2015, a Mexican Court ruled that SGM had not shown that it was the owner of the M/V Caballo Maya. That same day, a Mexican Court ruled that Marfield had shown that it was the owner of the M/V Caballo Maya.

25. SGM filed an injunction in the Mexican courts to prevent its removal as depository of the vessel. SGM's injunction was denied.

26. On February 15, 2017, the M/V Caballo Maya was redelivered to Marfield.

27. Any supplies or services provided by Inmobiliaria to the M/V Caballo Maya were provided after issuance of the Depository Resolutions and after execution of the Depository Agreement and the SGM/Inmobiliaria Charter.

28. The supplies and services reflected in the Invoices were allegedly provided by third parties, not by Inmobiliaria directly.

29. There is no written assignment or subrogation agreement between the third parties who allegedly provided the supplies and services to the M/V Caballo Maya and Inmobiliaria.

30. There are no written agreements between the third parties who allegedly provided the supplies and services to the M/V Caballo Maya and Inmobiliaria.

31. There are no written assignment or subrogation agreements between Inmobiliaria and SGM.

### C. Marfield's Claim for Wrongful Arrest

32. At Inmobiliaria's request (Dkt. 2), the Court entered an order directing the United States Marshal Service to seize the M/V Caballo Maya on June 19, 2017. *See* Dkt. 4. The M/V Caballo Maya was seized by the United States Marshal Service that same day.

33. On October 13, 2017, the Court entered an order vacating the arrest of the M/V Caballo Maya after extensive briefing and a lengthy evidentiary hearing. See Dkt. 36.

34. On November 28, 2017, and upon leave of the Court, Marfield filed a counterclaim against Inmobiliaria for wrongful arrest of the M/V Caballo Maya. Dkt. 42.

35. Inmobiliaria did not timely file an answer to Marfield's claim for wrongful arrest.

36. The supplies and services reflected in the Invoices were not actually provided to the M/V Caballo Maya. The M/V Caballo Maya was completely neglected while SGM was acting as the depository of the vessel and Inmobiliaria was purportedly providing supplies and services to the vessel through third parties. The crew on board the vessel was kept in inhumane conditions and had to resort to using wood from the crane

support of the vessel to cook food and drinking rainwater. Once Marfield regained possession of the vessel in February 2017, some 900 tons of trash had to be removed from the vessel. SGM and Inmobiliaria's neglect left a previously state-of-the-art vessel filthy, damaged, and inoperable.

37. Inmobiliaria did not for the supplies and services reflected in the Invoices. By February 2017, the crew hired by Inmobiliaria had not been paid for nearly six months. The crew is currently in litigation in Mexico for unpaid wages for their time on board the M/V Caballo Maya.

38. The Court finds that the one wire transfer document for crew wages, which Inmobiliaria argued at trial gave rise to a valid maritime lien, is fraudulent. Inmobiliaria Trial Exhibit 5, at p. 2. The document does not have any reference to the M/V Caballo Maya. The document contains neither a bank letterhead nor a signature by a bank representative. The document does not refer to any invoice number.

39. Inmobiliaria had knowledge of the terms and conditions set forth in the Depository Resolutions and the Depository Agreement because they were received or executed by Cordova, who was a director and corporate representative of both Inmobiliaria and SGM.

40. To the extent the supplies and services reflected in the Invoices were provided to the M/V Caballo Maya by Inmobiliaria, Inmobiliaria knew before it provided such supplies and services that the PGR prohibited SGM (and consequently Inmobiliaria

as its agent) from encumbering the M/V Caballo Maya and from seeking reimbursement for expenses incurred during the Mexican arrest.

41. To the extent the supplies and services reflected in the Invoices were provided to the M/V Caballo Maya by Inmobiliaria, Inmobiliaria knew before it provided such supplies and services that it was responsible for payment of such expenses pursuant to the SGM/Inmobiliaria Charter.

42. To the extent the supplies and services reflected in the Invoices were provided to the M/V Caballo Maya by Inmobiliaria, Inmobiliaria knew before it provided such supplies and services that the London Arbitration Tribunal had entered an order preventing SGM (and consequently Inmobiliaria as its agent) from creating any charge, mortgage, or security interest on the vessel without Marfield's agreement or determination by the Tribunal.

43. Inmobiliaria did not timely plead the affirmative defense of "reliance on the advice of counsel." Even if it had timely pled the affirmative defense, Inmobiliaria presented no evidence showing it relied on the advice of counsel or any other expert prior to initiating this lawsuit to enforce a maritime lien and asking the Court to arrest the M/V Caballo Maya. While Inmobiliaria's Complaint suggests it consulted Dr. Omar Olvera de Luna ("Dr. De Luna") before filing this lawsuit, the Complaint itself was never admitted as evidence at trial. Inmobiliaria's allegations in its Complaint of reliance on Dr. De Luna's opinion are merely unproven allegations.

44. Inmobiliaria never showed Dr. De Luna the Depository Resolutions, Depository Agreement, and SGM/Inmobiliaria Charter. Marfield's expert witness, Enrique Garza Ruiz Esparza, stated that no expert could form an opinion regarding the existence of a maritime lien without reviewing the aforementioned documents.

45. Inmobiliaria failed to present a single fact witness during trial. On the first day of trial, Inmobiliaria informed the Court that its corporate representative, Carlos Lopez, would not testify live at trial because more pressing matters in Mexico prevented him from coming. Inmobiliaria also stated that its other corporate representative, Cordova, could not come to the United States because he did not have an entry visa.

46. Two declarations presented by Inmobiliaria were admitted at trial. Inmobiliaria Trial Exhibits 2, 4. Both are unsworn declarations of individuals not present in the United States, including Cordova who does not even possess a visa to enter the United States. The Court finds that the unsworn declarations are not probative of any facts in dispute between the parties. The declarations are conclusory and the documents referenced therein are not even attached to the declarations themselves. The allegations of material facts and conclusions asserted in declarations are not corroborated by any other evidence admitted at trial.

47. Despite being ordered by the Court to submit proposed findings of fact and conclusions of law on June 8, 2018, more than six weeks before trial, and being reminded to do so at least twice during trial, counsel for Inmobiliaria, Mr. Rufty, never complied with the Court's orders. On the final day of trial, Mr. Rufty explicitly stated to the Court

he would submit proposed findings of fact and conclusions of law later that day after closing arguments. To date, Inmobiliaria has failed to comply with the Court's repeated orders.

48. Inmobiliaria acted with malice, bad faith, or recklessly when it seized the M/V Caballo Maya knowing that it did not have an enforceable maritime lien.

49. Marfield has been damaged by Inmobiliaria's wrongful arrest. Those damages include its attorney's fees, expert fees, expenses, and court costs. Additionally, the wrongful arrest delayed and impaired the ability of Marfield to complete necessary repairs it needed to make to the M/V Caballo as a result of damage that was caused to the vessel while SGM acted as the depository. In sum, Marfield has stated by affidavit that these damages total $238,618.33. Dkt. 96. The Court finds that Marfield is entitled to these damages.

## II. CONCLUSIONS OF LAW

52. Inmobiliaria's claims as set forth in its Complaint have been dismissed or nonsuited. *See* Joint Motion to Realign (Dkt 71); *see also,* Joint Pre-Trial Order (Dkt. 76).

53. Inmobiliaria's Complaint asserts a maritime lien under Mexican law. Maritime liens under Mexican law only arise when a creditor provides certain statutory categories of services and supplies. *See* Ley de Navegación y Comercio Marítimos [L.N.C.][Navigation and Commerce Law], Chapter V, Article 91 (Mex.) (*see* Marfield Trial Exhibit 217 for English Translation).

54. The statute that lists the type of services and supplies that give rise to a maritime lien in Mexico is Article 91 of the Navigation Law. The only services and supplies that give rise to a maritime lien under Article 91 are:

(i) Salaries and other amounts due to the crew of the vessel, by virtue of their enrollment on board of the vessel, including repatriation expenses and social security benefits payable on their behalf;

(ii) Credits derived from the compensations caused by death or personal injuries arisen in land or water, in direct connection with the exploitation of the vessel;

(iii) Credits for the award for the salvage of the vessel;

(iv) Credits due by the vessel, derived from the use of port infrastructure, maritime signals, waterways and pilotage services;

(v) Indemnities payable for damages caused by the vessel by reason of pollution from hydrocarbons, radioactive qualities, or their combination with the toxic, explosive or other dangerous qualities of nuclear fuel or radioactive products or waste; and

(vi) Credits derived from the compensations for non-contractual liability, for the material loss or damage caused by the exploitation of the vessel, others than the loss, or from the damage caused to the cargo, the containers and the personal effects of the passengers carried on board the vessel.

*Id*.

55. The supplies and services reflected in Marfield Trial Exhibit 201 do not give rise to a maritime lien under Article 91 of the Navigation Law. *See id*.

56. Inmobiliaria is not a creditor with respect to the charges reflected in the Invoices. Because only a creditor has standing to assert a maritime lien pursuant to Article 91 of the Navigation Law, Inmobiliaria does not have standing to assert a maritime lien with respect to the Invoices. *See id*.

57. A charterer, such as Inmobiliaria, who provides supplies or services for a vessel under its charter, does not have a right of subrogation against the vessel because it is not a creditor. Accordingly, Inmobiliaria would not have a right of subrogation for payment of the Invoices. *See id*.

58. Article 93 of the Navigation Law establishes a deadline of one year to enforce a maritime lien (or privilege) in Mexico before the lien is extinguished. Article 95 of the Navigation Law (Marfield Trial Exhibit 219) establishes a lien arising from the repair of a vessel is extinguished when the vessel is redelivered. The supplies and services identified in Marfield Trial Exhibit 202 are time barred and have been extinguished pursuant to Navigation Law Articles 93 and 95 and cannot can support a lien under applicable Mexican law. *See* Ley de Navegación y Comercio Marítimos [L.N.C.][Navigation and Commerce Law], Chapter V, Articles 93 and 95 (Mex.) (*see* Marfield Trial Exhibits 218 and 219 for English Translation).

59. A maritime lien cannot exist where the claimant has knowledge of a no-lien provision of other authority preventing the creation of the same. *See, e.g., Ceres Marine*

*Terminals, Inc. v. M/V Harmen Oldendorff*, 913 F. Supp. 919, 924 (D. Md. 1995) ("Actual notice of a no-lien provision or of other lack of authority defeats a maritime lien because the supplier is then in a position to make an informed business decision, and may refuse to supply the vessel, make other arrangements for payment, or assume the risk.") (internal quotations and citations omitted). Inmobiliaria had knowledge of several such no-lien orders, including: (1) The October 1, 2015 Order from the London Arbitration Tribunal (Marfield Trial Exhibit 221); (2) the Depository Resolutions (Marfield Trial Exhibit 203); (3) the Depository Agreement (Marfield Trial Exhibit 204); (4) the SGM/Inmobiliaria Charter (Marfield Trial Exhibit 206); and (5) the Executive Order (Marfield Trial Exhibit 208).

60. Under Mexican law, reimbursement of the custodian of a seized asset is governed by an agreement. *See* Código Civil Federal [C.C.F.][Federal Civil Code], Title 8, Chapter I, Article 2517 (Mex.). The Depository Agreement is such an agreement and it prohibits SGM from asserting a lien against the M/V Caballo Maya. Because Inmobiliaria was purporting to act as SGM's agent when it allegedly provided the supplies and services at issue in this lawsuit, the Depository Agreement prohibits Inmobiliaria from asserting a lien against the M/V Caballo Maya. *See id*.

61. The SGM/Inmobiliaria Charter is a valid contract by and between Inmobiliaria and SGM. In that contract, Inmobiliaria assumed sole responsibility for the payment of "expenses for fuel, ports, captaincies, boat services, fees and taxes, docks and others, ship officers and crew, as well as all types of taxes, agent expenses, commissions,

loads, trimming, weighing, loading, unloading, declaration and delivery of the cargo, acknowledgement of the hatches and rigging for mooring" associated with the M/V Caballo Maya. Accordingly, Inmobiliaria is the sole party responsible for the charges reflected in the Invoices.

62. Inmobiliaria does not have a valid maritime lien under Mexican law. *See* Ley de Navegación y Comercio Marítimos [L.N.C.][Navigation and Commerce Law], Chapter V, Articles 91, 93 and 95 (Mex.) (*see* Marfield Trial Exhibits 217, 218 and 219 for English translations); *see also,* Código Civil Federal [C.C.F.][Federal Civil Code], Title 8, Chapter I, Article 2517 (Mex.).

63. Inmobiliaria's arrest of the M/V Caballo Maya was wrongful. The arrest was not due to mere negligence, but from malice, bad faith, or reckless disregard of Marfield's legal rights. *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937).

64. "Reliance on the advice of counsel" is an affirmative defense to a claim for wrongful arrest. *Indus. Mar. Carriers, LLC v. Dantzler, Inc.*, 611 Fed. Appx. 600, 601 (11th Cir. 2015). Because Inmobiliaria did not timely answer Marfield's claim for wrongful arrest and did not plead the affirmative defense of "reliance on the defense of counsel", it has waived the defense. *Marine Overseas Services, Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1233 (5th Cir. 1986); *see also,* Fed. R. Civ. P. 8(c).

65. Marfield is entitled to a recovery of its attorney's fees, expert fees, expenses, and court costs as damages for Inmobiliaria's wrongful arrest of the M/V Caballo Maya. Marfield has stated by affidavit that the damages total $238,618.33. Dkt.

96. *In re Merry Shipping, Inc.*, 650 F.2d 622, 624 (5th Cir. 1981) (punitive damages are available in "all actions under the general maritime law..."); *see also, Domar Ocean Transp., Ltd. v. Indep. Ref. Co.*, 783 F.2d 1185, 1191 (5th Cir. 1986) (attorney's fees incurred in securing the release of wrongfully attached property are recoverable as damages).

66.   Any of the foregoing findings of fact that contain conclusions of law shall be deemed to be conclusions of law, and any of the foregoing conclusions of law that contain findings of fact shall be deemed to be findings of fact.

**IT IS SO ORDERED.**

SIGNED at Galveston, Texas, this 21st day of September, 2018.

_____
George C. Hanks Jr.
United States District Judge